COURT OF APPEALS
DECISION
DATED AND FILED

February 14, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP2114-CR**

Cir. Ct. No. 2019CF410

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

HIENOK DEMESSIE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Barron County: JAMES C. BABLER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Hienok Demessie appeals from a judgment convicting him of three felonies. The sole issue on appeal is whether the circuit

court erroneously exercised its discretion when it imposed a substantial restitution award to be paid to an insurer, notwithstanding Demessie's claimed indigency and the outright dismissal of a charge related to the restitution award. We conclude the court did not erroneously exercise its discretion when ordering restitution, and we affirm the judgment of conviction.

## BACKGROUND

¶2 The State charged Demessie with arson of a building, two counts of burglary, theft of property worth more than $10,000, possession of burglarious tools, criminal damage to property worth over $2,500, and taking and driving a vehicle without the owner's consent. Relevant to this appeal, the arson charge was based upon allegations that Demessie intentionally damaged "by means of fire" a building owned by Ignition Enterprises LLC, and the property damage charge was based upon allegations that Demessie caused "total loss to building, equipment and inventory at [a] laundromat, belonging to Ignition Enterprises LLC." Demessie eventually entered guilty pleas to the property damage charge, one count each of burglary of a building and taking and driving a vehicle without owner's consent, in exchange for the outright dismissal of the arson charge and the dismissal of the remaining counts as read-in offenses.

¶3 The plea agreement did not include a stipulation as to restitution. At the sentencing hearing, the circuit court took evidence related to restitution, and the parties also addressed the court and commented on a presentence investigation report (PSI).

¶4 The State presented evidence from a fire investigator, a police detective, and an insurance adjuster. The fire investigator testified that the damage to the building was intentionally caused by a fire ignited by the application of open

2

flame to ordinary combustibles in a storage room of a laundromat located in the building at issue. The detective testified that Demessie was apprehended in a vehicle that was seen leaving the parking lot of an adjoining building at the time of the fire. In the front seat of the vehicle was a duffle bag containing items stolen from the storage room where the fire had originated. The tread pattern on the boots Demessie was wearing when apprehended matched a set of footprints from the crime scene. A jail inmate also relayed to police several incriminating statements that Demessie made about his involvement in the arson, including details that were not public. Finally, the insurance adjuster testified and submitted documents showing that Encova Insurance had paid a total of $854,640.14 for claims of damage to the building and its contents as well as a resulting loss of business income caused by the fire.

¶5      Demessie did not testify or present any witnesses. Demessie's trial counsel asserted it was "clear" that Demessie was indigent based upon the PSI (one page of which he offered to introduce into evidence), Demessie's representation by the State Public Defender, and the likelihood that Demessie was about to be incarcerated. Trial counsel then argued that justice did not require having an indigent defendant reimburse an insurer in an amount that would "drag him down emotionally and financially for the rest of his life."

¶6      The PSI related that Demessie had a GED, some technical college classes and training in carpentry and drywall installation, but that he was last employed in 2018, when he lost a job due to suspected drug use. A COMPAS[1]

---

[1] A Correctional Offender Management Profiling for Alternate Sanctions (COMPAS) report is an evidence-based actuarial tool for assessing a defendant's criminogenic risk and treatment needs.

3

evaluation cited in the PSI concluded that Demessie "may have sufficient skills to obtain or maintain a job and to manage [himself] financially." Demessie told the PSI author that he was behind in child support payments due to his unemployment and student loan debt, but that he believed he would be able to gain employment in the future.

¶7 The circuit court determined, based both upon Demessie's guilty plea and the evidence produced at the hearing, that Demessie had in fact started the fire underlying the property damage charge and that Encova Insurance had compensated the victim in the amount of $854,640.14 for losses that the victim had sustained as a result of the fire. The court then observed that it was "a fallacy to say that the insurance company isn't a victim." The court concluded that justice required restitution to Encova Insurance because the losses were so substantial and giving back lost sums would give Demessie "a sense of satisfaction and accomplishment," contributing to his rehabilitation. The court acknowledged that it would be "pretty difficult" for the insurance company to collect on the restitution award, but it noted that Demessie's ability to pay could be taken into account when setting the amount of restitution payments to be made while Demessie was on extended supervision and that any remaining amount could be converted to a civil judgment.

¶8 Adding $2,500 in restitution to the victim for the insurance deductible, plus mandatory surcharges, the circuit court ordered Demessie to pay a total of $942,854.15 in restitution. Demessie challenges the restitution order on appeal.

**DISCUSSION**

¶9　A circuit court is required by statute to order a criminal defendant to make full or partial restitution to compensate a victim for losses suffered as a result of any "crime considered at sentencing," unless the court finds, and states on the record, a substantial reason not to do so. WIS. STAT. § 973.20(1r) (2019-20);[2] *State v. Anderson*, 215 Wis. 2d 673, 682, 573 N.W.2d 872 (Ct. App. 1997). In addition, "if justice so requires," the court may order restitution to reimburse any insurer, surety or other person who has already compensated a victim for such a loss. Sec. 973.20(5)(d). In determining what amount of restitution is warranted, a circuit court shall take into account: (1) the amount of loss suffered by the victim as a result of a crime considered at sentencing; (2) the financial resources of the defendant; (3) the present and future earning capacity of the defendant; (4) the needs and earning ability of the defendant's dependents; and (5) any other factors the court deems appropriate. Sec. 973.20(13)(a). People or entities claiming restitution bear the burden of proving their losses while the defendant bears the burden of demonstrating an inability to pay. Sec. 973.20(14).

¶10　The scope of a circuit court's authority to order restitution presents a question of statutory interpretation subject to de novo review. *State v. Ziegler*, 2005 WI App 69, ¶10, 280 Wis. 2d 860, 695 N.W.2d 895. However, determinations as to the amount of restitution, whether the defendant's conduct was a substantial factor in causing any claimed expenses, and whether justice requires compensation to an insurance company all lie within the court's

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

discretion. *Id.*; *State v. Fernandez*, 2009 WI 29, ¶62, 316 Wis. 2d 598, 764 N.W.2d 509. We will uphold a discretionary restitution award as long as the court applied the correct legal standard to a logical interpretation of the facts of record. *State v. Muth*, 2020 WI 65, ¶14, 392 Wis. 2d 578, 945 N.W.2d 645. We will also uphold findings of fact underlying the restitution award unless they are clearly erroneous. *State v. Queever*, 2016 WI App 87, ¶13, 372 Wis. 2d 388, 887 N.W.2d 912.

¶11 Here, Demessie contends that the circuit court erroneously exercised its discretion by: (1) determining that the victim's losses were caused by a crime considered at sentencing; (2) imposing an amount of restitution beyond the defendant's ability to pay; and (3) treating the insurance company as a "victim" entitled to restitution. We will address each contention in turn.

¶12 Demessie first argues that there was insufficient evidence to demonstrate a causal nexus between the victim's losses and a crime considered at sentencing because the arson charge was dismissed; Demessie never admitted to starting the fire—only to breaking into the building and stealing items; and the State provided only circumstantial evidence that Demessie started the fire. Demessie's first two arguments seem to be premised on the idea that the property damage charge was based on damage caused by something other than the fire.[3] However, the property damage charge in the amended Information expressly

---

[3] It is telling that Demessie does not identify any other potential damage to which the property damage charge could relate, other than that caused by the fire. In addition, we note that Demessie did not oppose restitution to the building owner for the deductible on the same losses for which the insurer sought restitution—i.e., damage to the building and its contents and loss of business income. Whether compensated by insurance or uncompensated as a deductible, those items of restitution were based upon the exact same causal nexus to the property damage charge.

referred to the total loss of the building and its contents. Based upon the probable cause portion of the complaint, the only possible cause for that extent of alleged damage was the fire. It was reasonable, then, for the circuit court to rely in part upon Demessie's plea to the property damage charge to find that Demessie had started the fire. That finding, in turn, supported the court's resulting determination that the insurance payout for damage to the building and its contents and loss of business income was causally linked to that charge. The fact that the insurance payout at issue was *also* causally linked to the dismissed arson charge is irrelevant.

¶13 Moreover, even if Demessie's plea to the property damage charge were insufficient on its own to establish that Demessie started the fire that caused the claimed restitution damages, the circumstantial evidence submitted by the State at the restitution hearing was more than sufficient to do so. As outlined above, the State introduced several items of physical evidence linking Demessie to the burglary that occurred in the same room and at the same time as the fire that destroyed the building. That evidence was corroborated by a jailhouse informant who relayed statements attributed to Demessie containing details of the incident that were not released to the public.

¶14 Demessie secondly argues that the circuit court imposed an amount of restitution in excess of what the court implicitly acknowledged that Demessie had the ability to pay, and that the court improperly deferred a more precise determination of Demessie's actual ability to pay to the Department of Corrections. As the State correctly points out, however, a defendant cannot complain about a court's failure to consider his or her financial circumstances when the defendant did not present any evidence of his or her financial resources or ability to pay. *See State v. Boffer*, 158 Wis. 2d 655, 663, 462 N.W.2d 906

7

(Ct. App. 1990). Arguments by counsel and references to the PSI generally are not a substitute for evidentiary submissions. *Id.*

¶15 Furthermore, even if the circuit court treated the PSI as an evidentiary submission in this case based upon counsel's offer to introduce a page of it into evidence, the PSI contained no specific information regarding Demessie's past income level, his anticipated future earning capacity, the amount of his child support obligations, or other expenses. Therefore, the PSI provided no adequate basis for the court to determine the actual amount of money Demessie could afford to pay in restitution. A general acknowledgement that it would be difficult for the insurance company to fully collect on a restitution award of hundreds of thousands of dollars does not equate to a finding that Demessie had *no* ability to pay restitution—particularly given the prospect discussed in the PSI that Demessie's training would enable him to find some future employment. In setting restitution, the court had no obligation to arbitrarily pick a number somewhere between nothing and the full amount of damages suffered.

¶16 Nor, for that matter, does WIS. STAT. § 973.20 cap restitution at the amount a defendant has the actual ability to pay prior to the discharge of a sentence. *Fernandez*, 316 Wis. 2d 598, ¶¶4-5. The statute merely requires the court to take a defendant's ability to pay into consideration—which the circuit court plainly did, as shown by its collectability comment. In light of Demessie's failure to satisfy his burden of proof regarding his alleged inability to pay, there was nothing improper about the court's award of the full amount of claimed restitution or its observation that Demessie's probation agent would be able to determine the actual amount of restitution Demessie would be expected to pay during his period of extended supervision.

¶17 Demessie argues thirdly that the circuit court's comment that it was "a fallacy to say that the insurance company isn't a victim" demonstrates that the court improperly treated the insurance company as a statutory victim entitled to restitution under WIS. STAT. § 973.20(1r), rather than as an insurer entitled to restitution under § 973.20(5)(d) only if justice so requires. Alternatively, Demessie argues that the court employed a "preconceived policy" that justice requires all insurance companies to be paid restitution.

¶18 We disagree with Demessie's characterizations of the circuit court's comments. Taken in context, it is clear that the court was referring to the insurance company as a "victim" only in the general sense of it having suffered a monetary loss, not according to the statutory definition. The court distinguished the statutory victim—i.e., the insured property owner—as the "direct victim" in its discussion, before it concluded that "[j]ustice does require reimbursement of losses here." The court also stated that it could "see there may be some circumstances in which the insurer should not be" reimbursed for compensation paid to the statutory victim. In addition, the court rationally concluded that justice required restitution to Encova Insurance because the losses were so substantial and giving back lost sums would give Demessie "a sense of satisfaction and accomplishment," contributing to his rehabilitation. In sum, we are satisfied that the court did not erroneously exercise its discretion when it awarded restitution to the insurance company in this case.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9